UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

PACER Cover Sheet
for Electronically Filed Documents

Any data shown here are current as of 06/10/06 . Any element of information on this form, except the received date, is subject to change as changes may be made to the Court's official docket.

Case Title: Citibank USA, NA v. Paulette Penner

Case Number: 04-01184

## Document Information

Description: Memorandum Opinion re: [18-1] Motion For Summary Judgment by Citibank USA, NA

Received on: 2005-08-16 14:06:04.000

Date Filed: 2005-08-16 00:00:00.000

Date Entered On Docket: 2005-08-17 00:00:00.000

## Filer Information

Submitted By: James Burke

**If this form is attached to the document identified above, it serves as an endorsed copy of the document as it existed on the above date. To confirm that nothing has changed since then, review the docket.**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
PAULETTE PENNER,
    Debtor.                        No. 7-04-11823 SA

CITIBANK USA, N.A., SUCCESSOR IN
INTEREST TO SEARS, ROEBUCK AND CO.,
    Plaintiff,
v.                                Adv. No. 04-1184

PAULETTE PENNER,
    Defendant.

MEMORANDUM OPINION ON PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT AGAINST DEFENDANT PAULETTE PENNER

    Plaintiff Citibank USA, N.A. filed an Amended Complaint (doc. 2) to determine the dischargeability of a debt incurred by Defendant Paulette Penner. The Amended Complaint asks the Court to find the debt nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

    This matter is before the Court on Plaintiff's Motion for Summary Judgment Against Defendant Paulette Penner (doc. 18) ("Motion"), Defendant's Response (doc. 21), and Plaintiff' Reply (doc. 23). Plaintiff is represented by Paul M. Kienzle III. Defendant is represented by Walter L. Reardon, Jr. For the reasons recited below, the motion is denied.

    New Mexico Local Bankruptcy Rule 7056-1 sets forth the requirements in regards to both filing and responding to a

motion for summary judgment. As it pertains to a party's response, that Local Rule states:

> A memorandum in opposition to the motion shall contain a concise statement of the material facts as to which the party contends a genuine issues does exist. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies, and shall state the number of the movant's fact that is disputed. All material facts set forth in the statement of the movant shall be deemed admitted unless specifically controverted.

The Response to Plaintiff's Motion did not follow the requirements of Local Rule 7056-1. The Response (1) failed to provide a concise statement of the material facts as to which Defendant contends a genuine issue exists; (2) failed to number the facts; (3) failed to refer with particularity to the portions of the record upon which Defendant relied; (4) and failed to state the number of the movant's fact that were disputed.

Summary judgment cannot be granted simply because a party fails to properly oppose a motion, even if that failure violates a local rule. See Hibernia Nat'l Bank v. Adminstracion Central Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir. 1985). The court may only grant the motion once the movant has met its burden by establishing the absence of a genuine issue of material fact. Id. The Court must

2

therefore consider the motion based on the merits, rather than merely on procedural grounds.

**Undisputed facts**

The following facts are undisputed, based on the Amended Complaint and Answer:

1. The Court has jurisdiction over the parties and subject matter of the complaint, pursuant to 28 U.S.C. § 1334. This is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2).
2. Defendant filed a petition under Chapter 7 on March 15, 2004.
3. On June 8, 2004, Plaintiff Citibank USA, N.A. filed a Motion to Extend Deadline to File Complaint to Determine Dischargeability of Debt.
4. The Court extended the deadline to determine dischargeability of certain debts until September 10, 2004.
5. The complaint was timely filed.
6. Defendant made an initial charge of $11,537.55 on Account Number 5121071780648519. The initial charge and all subsequent charges were incurred for business purposes.
7. Defendant's balance limit on Account Number 5121071780648519 was $11,900.

3

8. Defendant currently owes Plaintiff $12,758.38 on Account Number 5121071780648519.

9. All unsecured credit card debts listed on Defendant's schedules are in the nature of business debts, incurred for Defendant's business, Santa Fe Purified Water/Water to Go.

10. In the second quarter of 2003, Defendant's business was "scrambling" to pay it debts.

11. Defendant's business ceased in July 2003 due to a lack of operating funds.

12. Defendant's business had ceased operations prior to making charges on Account Number 5121071780648519.

The following facts are deemed admitted pursuant to NM LBR 7056-1:

13. Defendant has a master's degree in organizational management.

14. Defendant has owned and operated two separate businesses.

15. On August 27, 2003, Defendant made an initial charge to Account Number 5121071780648519 in the amount of $11,537.55. In October 2003, two additional charges totaling $234.40 were made to the account.

16. The Citibank USA, N.A. Sears Mastercard Card Account Cardholder Agreement states: "You promise to use your

4

Account only if you have the intent and financial capacity when the transaction occurs to repay the amount in full pursuant to the terms of this agreement."

17. Defendant's business was unable to ever generate a profit.
18. Defendant's business never reached the break-even point.
19. In July 2003, Defendant had certain knowledge that the Defendant's business was facing financial difficulties.
20. In the second quarter of 2003, Defendant considered filing bankruptcy.
21. Prior to the debts incurred on Account Number 5121071780648519, Defendant had ten existing credit card accounts with other creditors.
22. Prior to incurring her debt with Plaintiff Citibank USA, N.A., Defendant owed approximately $119,000 in credit card debt.
23. Defendant applied for the credit card with Plaintiff Citibank USA, N.A. after Defendant had incurred all other credit card debts listed in Defendant's bankruptcy schedules.

5

24. At the time that Defendant incurred debts on Account Number 5121071780648519, all of Defendant's other credit cards had maximum balances.

25. Defendant incurred total charges on Account Number 5121071780648519 in the amount of $11,780.95.

26. Defendant did not make any payments to Plaintiff Citibank USA, N.A. on Account Number 5121071780648519.

27. The interest rate for Account Number 5121071780648519 is 23.7%.

28. The Cardholder Agreement provides that Plaintiff Citibank USA, N.A. may recover reasonable attorney's fees if it succeeds in this action.

## DISCUSSION

Summary judgment motions are guided by Federal Rule of Civil Procedure 56. In part, that rule states:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).

A party that moves for summary judgment has the burden of showing the absence of a genuine issue as to any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144,

6

157 (1970). The material presented by the movant must be viewed in the light most favorable to the opposing party. Id. A moving party must present evidence that forecloses the possibility that a genuine issue exists. Id. at 158. A movant that does not present such evidence will be denied summary judgment. Id.

The standard by which a judge is to consider a motion for summary judgment mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a). Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A verdict will be directed when governing law permits but one reasonable conclusion based on the evidence. Id. The inquiry by the judge, in regards to either a motion for summary judgment or directed verdict, is whether sufficient evidence has been produced to declare that the moving party must prevail as a matter of law. See id. at 251-52.

**Dischargeability Under § 523(a)(2)(A)**

Viewing the evidence in the light most favorable to Defendant Paulette Penner, summary judgment should not be granted at this time.

Section 523(a)(2)(A) states:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
> …

7

>              (2) for money, property, services, or an
>                  extension, renewal, or refinancing of credit,
>                  to the extent obtained by –
>                (A) false pretenses, a false representation, or
>                    actual fraud, other than a statement
>                    respecting the debtor's or an insider's
>                    financial condition;

A creditor must prove five elements by a preponderance of evidence in order to prevail on a claim of nondischargeability under § 523(a)(2)(A). See <u>Lang v. Lang (In re Lang)</u>, 293 B.R. 501, 514 (10th Cir. B.A.P. 2003). The five elements are:

1) the debtor made a false representation;
2) the debtor made the representation with the intent to deceive the creditor;
3) the creditor relied on the representation;
4) the creditor's reliance must have been justifiable; and
5) the creditor must have sustained a loss as a result.

<u>Id.</u>

In <u>Chevy Chase Bank FSB v. Kukuk</u>, 225 B.R. 778, 785 (10th Cir. B.A.P. 1998), the court held that for the purposes of dischargeability under § 523(a)(2)(A), the use of a credit card creates an implied representation that the debtor intends to repay the debt, but does not create an implication of ability to repay.

**A. Ability to Repay**

A consumer will use a credit card for the specific reason that he or she is unable to repay the debt at that

8

time. Id.[1] The proper inquiry by the court is to determine whether the debtor had the ability to pay the debt within the terms of the credit card agreement. Id. at 787. This may simply be the ability to make minimum monthly payments. Id. At the time that Defendant Pauline Penner incurred the charges, she was employed by Bernard Holding & Associates in Albuquerque. Motion Ex. A, Dep. of Paulette Penner at 5; see also Statement of Affairs, Question 1. Defendant earned $75,000 at this position in 2003. Id. It is reasonable to assume that these circumstances would have permitted Defendant to make the minimum monthly payments for the years or decades it would have taken her to pay the debt at that rate. Therefore, Plaintiff has not proved an inability to repay the debt within the terms of the credit card agreement.

**B. Intent to Repay**

When considering a claim of nondischargeability based on § 523(a)(2)(A), a court must determine whether the implied intent of the credit card user involved a fraudulent representation. Id. at 786. A debt will be found

---

[1] For purposes of this decision, the statement is accurate enough. Credit cards are also increasingly used when the user could easily pay in cash but wants to accumulate "rewards" such as airline miles or, as was initially the case with the Diner Club card, wants to pay for a meal at a restaurant without using cash or a checkbook.

9

nondischargeable under 523(a)(2)(A) only if there has been a showing of actual or positive fraud. Anastas v. American Sav. Bank (In re Anastas), 94 F.3d 1280, 1286 (9th Cir. 1996)(reversing a finding of liability because the trial court relied too heavily on the financial condition of the debtor as evidence of intent to repay). Actual fraud will exist only if the court finds moral turpitude or intentional wrong. Id.; see also Kukuk, 225 B.R. at 787 (citing Driggs v. Black (In re Black), 787 F.2d 503, 505 (10th Cir. 1986)). The court should consider whether the debtor maliciously and in bad faith incurred a debt with the hope of avoiding that debt by petitioning for bankruptcy. Id.; Anastas at 1286. While the Tenth Circuit permits a court to find fraud if the debtor showed a reckless disregard for the truth of a representation, Kukuk, 225 B.R. at 787, a finding of reckless disregard "should be very narrowly interpreted." Id. In other words, "a line is to be drawn between an intent to mislead and mere negligence. An honest belief, however unreasonable, that the representation is true and the speaker has information to justify it has been held to be no sufficient basis for deceit." Id. at 788 (citing Prosser and Keeton on Torts, p. 742 (5th ed. 1984)). (Internal quotation marks and punctuation omitted.)

In <u>Citibank South Dakota v. Dougherty (In re Dougherty)</u>, 84 B.R. 653, 657 (9th Cir. B.A.P. 1988), the court laid out twelve factors that may be used to aid in the determination of whether a debtor lacked an intent to repay. These twelve factors are as follows:

1) the length of time between the charges made and the filing of the bankruptcy;
2) whether the debtor consulted an attorney regarding bankruptcy prior to the charges being made;
3) the number of charges made;
4) the amount of the charges;
5) the financial condition of the debtor at the time the charges were made;
6) whether the charges were above the credit limit of the account;
7) whether the debtor made multiple charges on any given day;
8) whether or not the debtor was employed;
9) the debtor's employment prospects;
10) the debtor's financial sophistication;
11) whether there was a sudden change in the debtor's buying habits; and
12) whether the purchases were made for luxuries or necessities.

<u>Id.</u>

A number of courts have adopted these factors when determining dischargeability under § 523(a)(2)(A). <u>See, e.g.</u>, <u>Household Credit Servs. v. Ettell (In re Ettell)</u>, 188 F.3d 1141, 1144 (9th Cir. 1999); <u>Kukuk</u>, 225 B.R. at 786. Although the factors may be helpful in determining whether a debtor possessed a fraudulent intent, these factors are neither exhaustive, nor is any one factor dispositive. <u>See id.</u> The demeanor and credibility of the witness will play a

11

large role when a court assesses whether or not a debtor possessed a fraudulent intent. Id.

In the present case, a number of the Dougherty factors weigh in favor of finding that the Defendant possessed a fraudulent intent, while others suggest that the debt should be found dischargeable. The issue of dischargeability under 523(a)(2)(A) is not one that can be resolved by simple "factor counting." See Bank One Columbus, N.A. v. Schad (In re Kountry Korner Store), 221 B.R. 265, 273 (Bankr. N.D. Okla. 1998). The Dougherty factors provide a helpful objective test, but the burden is on the creditor to prove the debtor's *subjective* intent. Id. at 272. For these reasons, it is necessary to look beyond the Dougherty factors when determining whether or not the debt incurred by Defendant Paulette Penner should be discharged.

Plaintiff's Motion recites specific reasons it believes that the debt should be found nondischargeable. Plaintiff suggests that Defendant's lack of payment is indicative of a fraudulent intent. Lack of payment is merely breach of contract and not proof of fraud. See id.; see also Kukuk, 225 B.R. at 786 ("[D]ebtor's intent cannot be inferred solely by the fact that the debtor does not repay the credit card used and seeks bankruptcy

12

protection."). Therefore, this factor alone is not dispositive on the issue of fraudulent intent.

The Motion also states that the Court should find fraudulent intent based on the fact that Defendant's business was in financial distress at the time that the charges were incurred. A debtor's poor financial condition should never become a substitute for a finding of fraudulent intent. See Kukuk, 225 B.R. at 786 (citing Anastas, 94 F.3d at 1286). A debtor's unreasonably optimistic view about his or her ability to repay will not on its own constitute a fraudulent representation. Id. at 788. The fact that Defendant Penner may have had unrealistic hopes about repaying the debts does not necessarily dictate that she had no intention of repaying the debts at the time they were incurred.

The burden on a party moving for summary judgment is to foreclose the possibility that a genuine issue of material fact exists. Adickes, 398 U.S. at 158. The facts and arguments set forth in the Motion do not meet this burden. While a number of the facts presented may weigh in favor of finding a fraudulent intent, the Court has not yet been able to consider the credibility of the witness. The court in Kukuk suggested that demeanor and credibility play a large role in the determination of whether a debt should

13

be found nondischargeable under 523(a)(2)(A). <u>Kukuk</u>, 225 B.R. at 786. Summary judgment must granted cautiously when a person's intent is at issue, as this will usually raise questions that require a factfinder's determination. <u>See United States v. One 1989 Jeep Wagoneer</u>, 976 F.2d 1172, 1176 (8th Cir. 1992). For these reasons, summary judgment is not appropriate and the determination of dischargeability is better left for trial.[2]

The Court will enter an Order denying Plaintiff's Motion for Summary Judgment.

*[signature]*

Honorable James S. Starzynski
United States Bankruptcy Judge

---

[2] The case of <u>Signet Bank v. Keyes</u>, No. 91-8039, 1992 WL 66723 (10th Cir. Apr. 3, 1992), states that "Debtors' use of the credit cards to charge purchases and to obtain cash advances implied a representation by the Debtors to the Bank that Debtors had the ability and the intention to pay the obligations incurred." (Citation omitted.) <u>Id.</u> at **3. That language suggests that summary judgment would be appropriate based on the facts of this case. However, as an unpublished opinion, <u>Signet Bank</u> has no precedential value and therefore does not bind the Court. 10th Cir. R. 36.3(A).

14

I hereby certify that a true and correct copy of the
foregoing was electronically transmitted, faxed, delivered,
or mailed to the listed counsel and/or parties on August
16, 2005.


Paul M Kienzle, III
PO Box 587
Albuquerque, NM 87103-0587

Walter L Reardon, Jr
3733 Eubank Blvd NE
Albuquerque, NM 87111-3536

*James E. Burke*